IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FLOYD S. DAVIDSON,                        08-CV-756-BR

        Plaintiff,                     OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant.


DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center
Suite 235
Portland, OR 97223
(503) 245-6309

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1158


1 - OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2113

        Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Floyd S. Davidson seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Plaintiff seeks an order reversing the decision of the Commissioner and remanding this action for an award of benefits.

     This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

     Plaintiff filed an application for DIB on March 31, 2000, alleging a disability onset date of February 7, 2000.

Tr. 101, 608.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on April 9, 2001.  Tr. 17.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff, a vocational expert (VE), and two lay witnesses testified.

The ALJ issued a decision on September 20, 2001, in which he found Plaintiff was not disabled.  Tr. 17-27.  Pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the final decision of the Commissioner on November 14, 2003.  On November 24, 2003, Plaintiff sought judicial review by this Court of the Commissioner's decision.

On August 25, 2004, United States District Judge Michael R. Hogan issued an Order reversing and remanding this matter to the Commissioner with the following directions:

1.   to develop the record as to whether Plaintiff's "impairments including non-severe impairments in combination have an impact on [Plaintiff's] ability to perform his past relevant work on a sustained basis or other work,"

2.   to address the side-effects of drugs used to control Plaintiff's impairments during the relevant period,

3.   to determine whether the hypothetical posed to the VE

---

[1] Citations to the official transcript of record filed by the Commissioner on July 15, 2008, are referred to as "Tr."

includes all of Plaintiff's limitations, and

4.    to clarify which portions of Plaintiff's testimony the ALJ accepted, and, therefore, "which portions of plaintiff's self-reported limitations should be included in plaintiff's [RFC]."

On March 6, 2006, the ALJ held a hearing on remand. Tr. 657-668. At the hearing, Plaintiff was represented by an attorney, and Plaintiff and a VE testified.

The ALJ issued a decision on April 27, 2006, in which he again found Plaintiff was not disabled. Tr. 608-19. Pursuant to 20 C.F.R. § 404.984(d), the ALJ's decision became the final decision of the Commissioner on May 9, 2008.

On May 22, 2008, Plaintiff sought judicial review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on October 30, 1942; was 55 years old on March 31, 2000, the date his insured status expired; was 58 years old at the time of the first hearing; and was 63 at the time of the hearing on remand. Tr. 101. Plaintiff completed high school Tr. 118. He has past relevant work experience as a security guard. Tr. 113.

Plaintiff alleges disability due to chest pains, back injury, right-shoulder rotator-cuff injury, and problems with his

4 - OPINION AND ORDER

right foot and left hip.  Tr. 112.  At the first hearing,
Plaintiff also alleged fatigue, a sleep disorder, headaches,
diarrhea, a pain disorder, a learning disorder, a personality
disorder, and dysthymic disorder.  Tr. 46, 49, 55.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 611-13.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate his inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson*, 359 F.3d at 1193.

"Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the

Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commis-
sioner determines the claimant's impairments meet or equal
one of a number of listed impairments that the Commissioner
acknowledges are so severe as to preclude substantial gainful
activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R.
§ 404.1520(a)(4)(iii).  The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404,
subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's RFC.  The claimant's RFC is an assessment
of the sustained, work-related physical and mental activities the
claimant can still do on a regular and continuing basis despite
his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec.
Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent schedule."  SSR
96-8p, at *1.  In other words, the Social Security Act does not

require complete incapacity to be disabled.  *Smolen v. Chater*, 80
F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a
claimant's RFC is at the heart of Steps Four and Five of the
sequential analysis engaged in by the ALJ when determining
whether a claimant can still work despite severe medical
impairments.  An improper evaluation of the claimant's ability to
perform specific work-related functions "could make the
difference between a finding of 'disabled' and 'not disabled.'"
SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also*
20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20
C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Tackett v. Apfel*, 180
F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy
this burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines set forth in the regulations at
20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner
meets this burden, the claimant is not disabled.  20 C.F.R.

§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff did not engage in substantial gainful activity from February 7, 2000, through March 31, 2000, the date on which Plaintiff's disability insured status expired.  Tr. 618.

At Step Two, the ALJ found Plaintiff has the severe impairment of back pain.  Tr. 618.  The ALJ concluded the remainder of Plaintiff's alleged conditions were not severe during the relevant period.  Tr. 618.

At Step Three, the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ assessed Plaintiff's RFC and found Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; could stand or walk six hours in an eight-hour work day; sit six hours in an eight-hour work day; could frequently climb, balance, crouch, and crawl and occasionally kneel; and was limited in his ability to reach in all directions.  Tr. 283-87, 618.

At Step Four, the ALJ found Plaintiff is able to perform his past relevant work as a security guard.  Tr. 618.  Accordingly, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 619.

9 - OPINION AND ORDER

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to fully develop the record as ordered by Judge Hogan on remand, (2) failed to evaluate Plaintiff's RFC properly, (3) failed to formulate an adequate hypothetical to the VE, and (4) failed to perform a functional analysis of Plaintiff's past relevant work.

## I.    The ALJ did not fail to develop the record as ordered by the Court on remand.

As noted, Judge Hogan directed the ALJ on remand to develop the record as to whether Plaintiff's "impairments including non-severe impairments in combination have an impact on [Plaintiff's] ability to perform his past relevant work on a sustained basis or other work."

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8, at *5.  The ALJ's RFC assessment, however, does not need to include short-term impairments that have improved and for which the medical record does not establish any work-related impairments.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1164-65 (9th Cir. 2008).

Plaintiff asserts the ALJ failed to consider Plaintiff's physical, nonsevere impairments of fatigue; a sleep disorder; headaches; or diarrhea and the mental, nonsevere impairments of pain disorder; a learning disorder; a personality disorder; and dysthymic disorder.  Plaintiff contends the ALJ erred when he

10 - OPINION AND ORDER

failed (1) to seek a medical-source statement, (2) to consider the side-effects of Plaintiff's medication in Plaintiff's RFC, and (3) to identify which portions of Plaintiff's testimony he accepted and which he rejected.

## A.  Plaintiff's nonsevere physical impairments.

The ALJ noted on remand that Plaintiff offered one new piece of evidence:  a letter from his treating physician Michael Carroll, M.D., from April 2006 in which Dr. Carroll opined Plaintiff "is disabled due to severe chronic low back pain.  He has suffered with this condition for more than 10 years. . . . Specifically, I believe [Plaintiff] has been continuously disabled since February of 2000."  Tr. 656.  Dr. Carroll noted Plaintiff "cannot stand, sit, or walk for more than four hours in a eight-hour work day . . . [and] . . . would miss at least two to four days per month due to exacerbation of his chronic pain."  Tr. 656.  The ALJ further noted Dr. Carroll did not conclude that Plaintiff was limited due to fatigue, a sleep disorder, headaches, or diarrhea.

Judge Hogan noted in his Order remanding the matter that it was "unclear if" considering Plaintiff's nonsevere impairments in conjunction with Plaintiff's severe impairment would result in any further functional capacity limitations. Accordingly, the ALJ considered the evidence of Plaintiff's nonsevere limitations.  The ALJ noted Plaintiff testified his

problems with fatigue, sleep disorders, headaches, and diarrhea
did not last for 12 months and no treating or examining physician
opined those conditions would have been expected to last for 12
months.  The ALJ, therefore, found "no vocationally relevant
limitations can be assessed or have been assessed by any
physicians" as to the effects of Plaintiff's nonsevere physical
impairments.  Tr. 614.  As noted, the ALJ's RFC assessment does
not need to include short-term impairments that improved and for
which the medical record does not establish any work-related
impairments.

On this record, the Court concludes the ALJ
sufficiently developed the record and did not err when he
concluded Plaintiff's nonsevere physical impairments, even when
considered in conjunction with Plaintiff's severe impairment of
back pain, did not result in any vocationally relevant
limitations for a period of at least 12 months because the ALJ's
determinations are based on substantial evidence in the record.

**B.    Plaintiff's nonsevere mental impairments.**

Plaintiff asserts the ALJ erred on remand when he did
not consider Plaintiff's nonsevere mental impairments in
conjunction with his physical impairment of back pain when
assessing Plaintiff's RFC.

In February 7, 2000, a nonexamining psychologist found
Plaintiff to be limited to performing simple tasks and limited in

his ability to have contact with the public due to a learning disorder, a dysthymic disorder, pain disorder, and personality disorder. Tr. 273-79. The nonexamining physician opined Plaintiff would have slight restrictions in his activities of daily living; slight difficulties in maintaining social functioning; and infrequent deficiencies of concentration, persistence, or pace. Tr. 280.

In June 2000, Duane Kolilis, Ph.D., conducted a psycho-diagnostic evaluation of Plaintiff and opined Plaintiff had a pain disorder, a dysthymic disorder, a personality disorder, and learning disorder. Tr. 402-06. Dr. Kolilis assessed Plaintiff with a GAF of 65.[2]

In his Order issued August 25, 2004, Judge Hogan concluded the ALJ

> correctly found [the opinion of the nonexamining psychologist] to be contradicted by Duane Kolilis, Ph.D. Dr. Kolilis found Plaintiff to be exaggerating and to actually function pretty well. Tr. 402-06. However, Dr. Kolilis did diagnose the same disorders and the ALJ failed to properly consider them even if non-severe.

Tr. 623. Judge Hogan noted "it is unclear if all of plaintiff's

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. A GAF of 65 indicates some mild symptoms (*e.g.* depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.* occasional truancy, or theft within the household), but generally functioning well with some meaningful interpersonal relationships. *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

impairments including [mental] non-severe impairments in combination have an impact on his ability to perform his past relevant work on a sustained basis or other work based on the record." Tr. 623.

On remand the ALJ pointed out Dr. Kolilis's observation that Plaintiff's answers on tests often appeared to be contrived because they were so "far off." As a result, Dr. Kolilis opined Plaintiff lacked credibility on his memory tasks. Tr. 405, 612. Dr. Kolilis opined Plaintiff suffered from a pain disorder, a dysthymic disorder, a personality disorder, and learning disorder, but he also concluded "there is not sufficient evidence of psychopathology which is severe enough to limit his capacity to function independently." Tr. 405. Dr. Kolilis also opined Plaintiff was capable of understanding and following "at least simple 1-2 step instructions" and found Plaintiff's "overall attention and concentration abilities difficult to assess due to what was deemed an insincere effort on the memory tasks." Tr. 405-06, 612.

On remand the ALJ accorded little weight to the nonexamining psychologist's opinion that Plaintiff was limited in performing simple tasks and in his ability to have contact with the public because these conclusions were contradicted by the opinion of Dr. Kolilis. Based on Dr. Kolilis's opinion, the ALJ found Plaintiff did not have any restrictions in his daily living

14 - OPINION AND ORDER

or in maintaining social functioning and had only mild

difficulties in his ability to maintain concentration,

persistence, or pace.  Tr. 613.

On this record, the Court concludes the ALJ complied

with the Court's directive on remand, adequately considered

Plaintiff's nonsevere mental impairments, and did not err when he

concluded Plaintiff's nonsevere impairments they did not alone or

in combination with Plaintiff's severe impairment of back pain

restrict Plaintiff's activities of daily living or his ability to

maintain social functioning because the ALJ's determination was

supported by substantial evidence in the record.

**C.    Plaintiff has not established the ALJ failed to seek a
medical-source statement.**

20 C.F.R. § 1513(b)(6) provides in pertinent part:

> Medical reports should include – . . . A statement
> about what you can still do despite your
> impairment(s) based on the acceptable medical
> source's findings. . . .  Although we will request
> a medical source statement about what you can
> still do despite your impairment(s), the lack of
> the medical source statement will not make the
> report incomplete.

Plaintiff contends the ALJ erred when he failed to

request a medical-source statement from Plaintiff's treating

physicians as to what Plaintiff's could do in light of his

impairments.  Specifically, Plaintiff asserts "[n]owhere in the

record is there any evidence that plaintiff's physicians were

requested to complete a medical source statement about

15 - OPINION AND ORDER

plaintiff's work related abilities." Defendant asserts medical-source statements are requested as part of the routine case development process, but such requests are only reproduced in the record if the medical source returns the cover letter as requested. The Commissioner points out that the request to Dr. Carroll specifically asked what Plaintiff could do in light of his impairments, and Dr. Carroll responded. According to the Commissioner, the fact that other requests are not in the record does not establish they were not made, but only that they were not returned. Thus, Plaintiff has not established the ALJ failed to request medical-source statements from doctors other than Dr. Carroll.

In addition, as noted, "the lack of the medical source statement [does] not make the report incomplete." 20 C.F.R. § 1513(b)(6). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here the ALJ developed the record as to Plaintiff's abilities by considering Plaintiff's severe and nonsevere impairments. The record does not contain ambiguous evidence as to the duration and nature of Plaintiff's nonsevere impairments. As noted, Plaintiff testified his nonsevere physical conditions did not last more than 12 months. In addition, Dr. Kolilis

opined Plaintiff's nonsevere mental impairments did not limit
Plaintiff's capacity to function independently and did not limit
him significantly in any other way.  Dr. Kolilis's opinion was
not contradicted by any other treating or examining physician as
to Plaintiff's abilities within the relevant period.  Finally,
Plaintiff does not identify any specific additional source to
whom the ALJ should have made an inquiry or who would have
provided more information about the relevant period.

      Accordingly, the Court concludes on the record that the
ALJ complied with Judge Hogan's direction on remand, the ALJ
developed the record adequately, and the ALJ did not err when he
concluded Plaintiff's nonsevere physical and mental impairments
did not have an impact on Plaintiff's ability to perform his past
relevant work during the pertinent period because the ALJ made
his determination based in substantial evidence on the record.

**D.    The ALJ considered the side-effects of Plaintiff's
        medication in his assessment of Plaintiff's RFC.**

      "The ALJ must consider all factors that might have a
significant impact on an individual's ability to work."  *Lozano*
*v. Astrue*, No. 06-15935, 271 Fed. Appx. 694, at *1 (9th Cir.
Mar. 26, 2008)(citing *Erickson v. Shalala*, 9 F.3d 813, 817 (9th
Cir. 1993)).  "These factors may include side effects of
medication."  *Erickson*, 9 F.3d at 818.

      Judge Hogan directed the ALJ on remand to "address
side-effect [*sic*] of drugs used to control plaintiff's

17 - OPINION AND ORDER

impairments during the relevant time period."  Tr. 623.

        The record reflects during the relevant period
Plaintiff was taking Vicodin, Motrin, Lipitor, and Trazodone.
Tr. 413.  When Plaintiff applied for DIB, he reported on his
application that his medications, including Vicodin, did not
cause any side-effects.  Tr. 117.  Nevertheless, Plaintiff
testified at the hearing that he experienced side-effects from
his medication during the relevant period, include diarrhea,
stomach noise, and dry mouth.  Tr. 64.  Plaintiff does not assert
stomach noise or dry mouth caused any limitation in his ability
to work during the relevant period, and the ALJ determined
Plaintiff's diarrhea did not continue for 12 months and also did
not cause work-related limitations.  The ALJ, therefore,
concluded there was not any evidence "of any side effects from
the claimant's medications that would cause any vocationally
relevant limitations during the period under adjudication."
Tr. 616.

        On this record, the Court concludes the ALJ properly
addressed the side effects of Plaintiff's medications and did not
err when he concluded there was not any evidence that Plaintiff's
side effects caused any vocationally relevant limitations because
the ALJ made his determination based on substantial evidence on
the record.

**E.    The ALJ sufficiently identified the portions of Plaintiff's testimony that he found not credible.**

Judge Hogan concluded the ALJ did not err when he rejected Plaintiff's testimony because Plaintiff's testimony was contradicted by evidence on the record.  The ALJ also relied on Dr. Kolilis's opinion that Plaintiff lacked sincerity, credibility, and motivation to return to work.  Tr. 625-27. Nevertheless, Judge Hogan noted:

> [W]hile it is clear that the ALJ rejected plaintiff's testimony to the extent he claimed total disability, it is not clear what portions of the testimony he did accept and therefore which portions of plaintiff's self-reported limitations should be included in plaintiff's residual functional capacity.

Tr. 627.  Judge Hogan directed the ALJ on remand to identify "which testimony the ALJ . . . rejected."  Tr. 627.

On remand, the ALJ specifically found Plaintiff's testimony not credible as to his alleged level of pain.  Tr. 617. The ALJ also did not credit Plaintiff's testimony that he lost his job as a result of pain because the record reflects Plaintiff lost his job while he was out with the flu and that he had intended to return to work.  Tr. 617.  The ALJ concluded Plaintiff's alleged impairments did not cause limitations during the relevant period that were greater than those experienced when he was working.  Accordingly, the ALJ did not include in his assessment of Plaintiff's RFC Plaintiff's self-reported limitations as to the extent of his pain or Plaintiff's testimony

19 - OPINION AND ORDER

that he was terminated from his employment due to pain.

On this record, the Court concludes the ALJ identified specifically the parts of Plaintiff's testimony that he rejected and that he did not include in his assessment of Plaintiff's RFC. Accordingly, the ALJ complied with Judge Hogan's directive on remand.

## II.  The ALJ properly evaluated Plaintiff's RFC.

Judge Hogan found it was "unclear if all of plaintiff's impairments including nonsevere impairments in combination have an impact on his ability to perform his past relevant work on a sustained basis or other work based on the record."  Tr. 623. Judge Hogan, therefore, directed the ALJ to evaluate Plaintiff's nonsevere impairments and to reassess Plaintiff's RFC.

As noted, the ALJ addressed Plaintiff's nonsevere impairments on remand, and the Court has concluded the ALJ did not err when he found Plaintiff's nonsevere impairments did not create any vocationally relevant limitations during the pertinent period.  The Court, therefore, concludes the ALJ complied with Judge Hogan's order on remand and considered Plaintiff's nonsevere impairments when he assessed Plaintiff's RFC.

In any event, Plaintiff asserts the ALJ erred because he failed to assess Plaintiff's ability to work on a "regular and continuing basis meaning 8 hours a day for 5 days a week or an equivalent work schedule."

20 - OPINION AND ORDER

The Court notes the record does not reflect that the ALJ
assessed Plaintiff's ability to return to his past relevant work
on anything other than a regular and continuing basis; *i.e.*,
eight hours per day for five days a week.  In addition, Plaintiff
does not cite any authority for his contention that the ALJ must
make a specific finding that a plaintiff is able to work eight
hours per day for five days per week.  The Fifth Circuit has held
an ALJ need not make a specific finding as to a plaintiff's
ability to sustain employment eight hours per day for five days
per week, but may subsume such a finding in the plaintiff's RFC
assessment.  *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir.
2003)(When the plaintiff alleged she could not work at all rather
than alleging she could only work for short spans of time, the
ALJ did not err by not making a specific finding as to the
plaintiff's ability to work eight hours per day for five days per
week because his assessment of the Plaintiff's RFC properly
subsumed such a finding).  *See also Perez v. Barnhart*, 415 F.3d
457, 466 (5th Cir. 2005)(same).

The Court finds *Frank* and *Perez* persuasive and adopts the
reasoning of those cases.  Here Plaintiff, like the plaintiffs in
*Frank* and *Perez*, alleges he cannot work at all rather than
alleging he can only work for short spans of time.  On this
record, the Court concludes the ALJ did not err when he did not
make a specific finding as to Plaintiff's ability to work eight

21 - OPINION AND ORDER

hours per day for five days per week because such a finding was
subsumed in the ALJ's assessment of Plaintiff's RFC.

**III. The ALJ posed a complete hypothetical to the VE and did not
err when he failed to perform a function-by-function
analysis of Plaintiff's past relevant work.**

Plaintiff contends the ALJ erred when he found Plaintiff
could return to his past relevant work because the ALJ's finding
was based on a hypothetical to the VE that omitted Plaintiff's
nonsevere impairments.  Plaintiff also contends the ALJ erred
when he failed to perform a function-by-function analysis of
Plaintiff's past relevant work.

**A.    The ALJ posed a complete hypothetical to the VE.**

The Court has concluded the ALJ did not err when he
found Plaintiff's nonsevere impairments did not create any
vocationally relevant limitations in the pertinent period.
Accordingly, the Court concludes the ALJ did not err when he did
not include Plaintiff's nonsevere impairments in his hypothetical
to the VE.

**B.    The ALJ did not err when he did not perform a function-
by-function analysis of Plaintiff's past relevant work.**

Plaintiff contends the ALJ erred when he did not
perform a function-by-function analysis of Plaintiff's past
relevant work as a security guard.  Plaintiff relies on SSR 82-
62, at *4, which provides:

> In finding that an individual has the capacity to
> perform a past relevant job, the determination or

decision must contain among the findings the
following specific findings of fact:

1. A finding of fact as to the individual's RFC.

2. A finding of fact as to the physical and mental
demands of the past job/occupation.

3. A finding of fact that the individual's RFC
would permit a return to his or her past job or
occupation.

Plaintiff also relies on *Carmickle* to support his
contention that the ALJ was required to perform a function-by-
function analysis of Plaintiff's past relevant work.  In
*Carmickle*, the Ninth Circuit concluded the ALJ erred in his
assessment of the plaintiff's RFC because

> [t]he ALJ's reliance on the VE's generic
> classification was error.  "[B]road generic
> occupational classifications . . . are
> insufficient to test whether a claimant can
> perform past relevant work." *Vertigan v. Halter*,
> 260 F.3d 1044, 1051 (9th Cir. 2001); *see also* SSR
> 82-61 (1982)("Finding that a claimant has the
> capacity to do past relevant work on the basis of
> a generic occupational classification of the work
> is likely to be fallacious and unsupportable.").
> And not only did the ALJ rely on a generic
> classification, he failed to explain his reasons
> for doing so.  At the hearing, the VE simply
> asserted, without explanation, that this is a
> light-duty position.  Likewise, the ALJ baldly
> concluded that this position is "classified as
> light work and do[es] not require the performance
> of tasks precluded by [the plaintiff's] [RFC]."

533 F.3d at 1167.  The Ninth Circuit noted "[t]he DOT is 'the
best source for how a job is generally performed,'" and concluded
the ALJ erred because he failed to provide a DOT classification
for the plaintiff's past relevant work.  *Id*. at 1166 (quoting

23 - OPINION AND ORDER

*Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)).

Plaintiff also relies on *Sivilay v. Apfel*, 143 F.3d 1298, 1299 (9th Cir. 1998), in which the court vacated

> the findings of the administrative law judge for the misapplication of Social Security Rulings 82-61 and 82-62.  *See Henrie v. U.S. Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993).  On remand, we direct the administrative law judge to investigate fully the demands of the applicant's past work and compare them to the applicant's residual mental and physical capabilities.

Here the VE noted Plaintiff's past relevant work as a security guard has the designation of 372.667-034 in the Dictionary of Occupational Titles (DOT); that it was light semi-skilled employment; and that the way Plaintiff described his past relevant work was consistent with the light semi-skilled classification with the exception of his job with the Port of Portland.  Tr. 77, 82.  The ALJ incorporated the restrictions of the security-guard position as described in 372.667-034 in his RFC assessment.  The Court, therefore, concludes the ALJ satisfied the requirements of *Carmickle* and *Sivilay* and did not err when he assessed Plaintiff's RFC.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 4th day of March, 2009.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

25 - OPINION AND ORDER